1   MICHAEL PIETRYKOWSKI (SBN: 118677)
    mpietrykowski@grsm.com
2   DON WILLENBURG (SBN: 116377)
    dwillenburg@grsm.com
3   ANNA MOURLAM (SBN: 312015)
    amourlam@grsm.com
4   GORDON REES SCULLY MANSUKHANI, LLP
    1111 Broadway, Suite 1700
5   Oakland, California 94607
    Phone: (510) 463-8685
6   Facsimile: (510) 984-1721

7   ROBERT NICHOLS (SBN: 100028)
    renichols01@comcast.net
8   3060 El Cerrito Plaza, Number 316
    El Cerrito, California 94530
9   Telephone: (510) 423-3280

10  Attorneys for Counter-Defendants The Lions Club
    Of Albany, California and The Albany Lions
11  Foundation

12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16  THE LIONS CLUB OF ALBANY,              )  CASE NO. 3:17-cv-05236 WHA
    CALIFORNIA, a nonprofit corporation,   )
17                                         )  **COUNTER-DEFENDANTS THE LIONS**
                          Plaintiff,       )  **CLUB OF ALBANY, CALIFORNIA AND**
18                                         )  **THE ALBANY LIONS CLUB**
              v.                           )  **FOUNDATION'S NOTICE AND**
19                                         )  **MOTION FOR SUMMARY JUDGMENT**
    THE CITY OF ALBANY, a Charter City;    )  **OR PARTIAL SUMMARY JUDGMENT**
20  LANCE CALKINS, in his personal and official )  **AND MEMORANDUM IN SUPPORT**
    capacities as Fire Chief of the City of Albany; )
21  JEFF BOND, in his personal and official   )  [Pursuant to Fed. R. Civ. Proc. 56]
    capacities as Community Development     )
22  Director of the City of Albany; PENELOPE )  Accompanying Papers:
    LEACH CRUMPLEY, in her personal and    )
23  official capacities as City Manager of the City )    1.  Declaration of Robert E. Nichols
    of Albany; PETER MAASS, in his personal )       2.  Request For Judicial Notice
24  and official capacities as City Councilmember )      3.  [Proposed] Order
    of the City of Albany; ROCHELLE A.      )
25  NASON, in her personal and official capacities )  Date:   May 24, 2018
    as City Councilmember of the City Albany; )  Time:   9:00 a.m.
26  and DOES 1 through 50;                  )  Dept.:  12
                                            )  Judge:  The Honorable William H. Alsup
27                        Defendants.       )
                                            )
28  THE CITY OF ALBANY, LANCE              )
    CALKINS, JEFF BOND, PENELOPE LEACH     )

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1   CRUMPLEY, PETER MAASS, and ANA )
    ROCHELLE NASON,                 )
2                                   )
                      Counter-      )
3                     Claimants,    )
                                    )
4         v.                        )
                                    )
5   THE LIONS CLUB OF ALBANY,       )
    CALIFORNIA, a nonprofit organization; THE )
6   ALBANY LIONS CLUB FOUNDATION, a )
    nonprofit organization; and     )
7   ROES 1-30,                      )
                                    )
8                     Counter-      )
                      Defendants.   )
9   _____)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**1111 Broadway, Suite 1700**
**Oakland, CA 94607**

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
**1111 Broadway, Suite 1700**
**Oakland, CA 94607**

**I.      NOTICE OF MOTION**

PLEASE TAKE NOTICE that on May 24, 2018, at 9:00 a.m., at Courtroom 12, before the Honorable William H. Alsup, Counter-Defendants The Lions Club of Albany, California and The Albany Lions Foundation ("Counter-Defendants") will and hereby do seek summary judgment, or, in the alternative, partial summary judgment. The motion will be based on this Notice and Motion, the Memorandum below, the Request for Judicial Notice, and the Declaration of Robert E. Nichols.

**II.      ISSUES TO BE DECIDED**

Counter-Defendants request the following relief:

1. Summary judgment in favor of Counter-Defendants and against Counter-Claimants.

2. Partial summary judgment in favor of Counter-Defendants and against Counter-Claimants on Counter-Claimants' cause of action for quiet title.

3. Partial summary judgment in favor of Counter-Defendants and against Counter-Claimants on Counter-Claimants' cause of action for trespass.

4. Partial summary judgment in favor of Counter-Defendants and against Counter-Claimants on Counter-Claimants' cause of action for nuisance.

5. Partial summary judgment in favor of Counter-Defendants and against Counter-Claimants on Counter-Claimants' cause of action for violation of the California Constitution.

6. Partial summary judgment in favor of Counter-Defendants and against Counter-Claimants on Counter-Claimants' cause of action for violation of the Establishment Clause.

7. An award of Counter-Defendants' costs, expenses and reasonable attorneys' fees and such other relief as the Court may deem just and proper.

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

**TABLE OF CONTENTS**

**Page**

MEMORANDUM ..................................................................................................9

    A.   Facts ...........................................................................................................9

         1.   The Parties. ......................................................................................9

         2.   The Cross is privately erected in 1971 on private land. ...................9

         3.   The Albany Lions Club is granted an easement in 1973 to maintain the Cross. ....................................................................................9

         4.   The City accepts and acknowledges the easement since its granting. .......................................................................................10

         5.   The constitutionality of the Cross is upheld in a 1978 court decision affirmed in 1985. ..............................................................10

         6.   In 2015, the City is pressured, on religious grounds, to force removal of the Cross. ......................................................................11

         7.   In August 2016, the City disconnects electrical service to the Cross without due process. ....................................................................12

         8.   Power is restored to the Cross. ......................................................14

    B.   Argument .................................................................................................14

         1.   The standard for summary judgment. ............................................14

         2.   Counter-Claimants' cause of action for quiet title fails because the statute of limitations has run and Counter-Claimants have not put forth clear and convincing evidence of title. ...............................15

               i.   Counter-Claimants' cause of action for quiet title fails because the statute of limitations has run. ....................................15

               ii.   Counter-Claimants' cause of action for quiet title fails because Counter-Claimants have not put forth clear and convincing evidence of title inconsistent with the easement. ........15

         3.   Counter-Claimants' cause of action for trespass fails because Counter-Defendants have a valid or prescriptive easement. .....................16

         4.   Counter-Claimants' cause of action for nuisance fails because nothing maintained under the express authority of a statute can be deemed a nuisance, Counter-Claimants consented to the presence of the Cross, and it is not indecent, obstructive, or a fire hazard. ...............17

               i.   Counter-Claimants have no cause of action for nuisance because the electrical wiring of the Cross is statutorily permitted. .........................................................................17

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

ii.    Counter-Claimants have no cause of action for private nuisance because they cannot prove the necessary elements of the claim. ..................................................................18

iii.   Counter-Claimants have no cause of action for public nuisance because they cannot prove the necessary elements of the claim. ..................................................................20

5.    Counter-Claimants' causes of action for violation of the Establishment Clause and the California Constitution fail because the Cross was established by a non-governmental entity, before the park was acquired, and its constitutionality has already been litigated. ..................................................................20

i.    There is no violation of the California or U.S. Constitution because The Albany Lions Club is not a government entity. ........20

ii.    There is no violation of the U.S. Constitution because the Cross is a longstanding, privately-maintained monument that is not a government endorsement of religion.........................21

iii.   There is no violation of the California Constitution, and the claim was adjudicated thirty-two years ago................................27

6.    All of Counter-Claimants' causes of action fail because of the doctrine of laches. ..................................................................28

C.    Conclusion ..........................................................................................29

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Dunham,*
137 Cal. App. 4th 1244 (2006) .................................................................. 17

*ACLU Neb. Found. v. City of Plattsmouth,*
419 F.3d 772 (8th Cir. 2005) ..................................................................... 24

*Anderson v. Salt Lake City Corp.,*
475 F.2d 29 (10th Cir. 1973) ........................................................ 23, 24, 27

*Bd. of Educ. of Westside Cmty. Schs. v. Mergens,*
496 U.S. 226 (1990) ................................................................................... 21

*Cal. Apartment Ass'n v. City of Stockton,*
80 Cal. App. 4th 699 (2000) ...................................................................... 18

*Call v. Albany,*
474 U.S. 1057 (1986) ................................................................................. 28

*Capitol Square Review & Advisory Bd. v. Pinette,*
515 U.S. 753 (1995) ................................................................................... 21

*Card v. City of Everett,*
520 F.3d 1009 (9th Cir. 2008) ................................................................... 26

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................ 14, 15

*Citizens for Parental Rights v. San Mateo Cty. Bd. of Educ.,*
51 Cal. App. 3d 1 (1975) ........................................................................... 21

*Civic Western Corp. v. Zila Industries, Inc.,*
66 Cal. App. 3d 1 (1977) ........................................................................... 16

*Connolly v. McDermott,*
162 Cal. App. 3d 973 (1984) ..................................................................... 16

*Felgenhauer v. Soni,*
121 Cal. App. 4th 445 (2004) ............................................................. 16, 17

*Freedom from Religion Found, Inc. v. Weber,*
628 F. App'x 952 (9th Cir. 2015) .............................................................. 26

*Hails v. Martz,*
28 Cal. 2d 775 (1946) ................................................................................ 16

*Harrison v. Bouris,*
139 Cal. App. 2d 170 (1956) ..................................................................... 16

*Johnson v. City of Loma Linda,*
24 Cal. 4th 61 (2000) ................................................................................. 28

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971).................................................................................................. 22, 28

*Lopes v. Wren*,
   No. C 06-03705 CRB, 2007 U.S. Dist. LEXIS 45660 (N.D. Cal. June 25, 2007) .................. 21

*Los Angeles Ry. Corp. v. Los Angeles*,
   16 Cal. 2d 779 (1940) .................................................................................................. 18

*Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................................................... 15

*Midland Innovations, NV v. Weiland Int'l, Inc.*,
   Nos. 15-16015, 2017 U.S. App. LEXIS 20562 (9th Cir. Oct. 19, 2017).............................. 15

*Robi v. Five Platters, Inc.*,
   838 F.2d 318 (9th Cir. 1988) ......................................................................................... 27

*Salazar v. Buono*,
   559 U.S. 700 (2010)........................................................................................ 24, 25, 26, 27

*Slater v. Blackwood*,
   15 Cal. 3d 791 (1975) ................................................................................................... 27

*State Bd. of Equalization v. Superior Court*,
   39 Cal.3d 633 (1985) ................................................................................................... 27

*Thomson v. Call*,
   38 Cal. 3d 633 (1985) ............................................................................................. 11, 28

*Trunk v. City of San Diego*,
   629 F.3d 1099 (9th Cir. 2011) ........................................................................................ 26

*Tucker v. Cal. Dep't of Educ.*,
   97 F.3d 1204 (9th Cir. 1996) ......................................................................................... 21

*Van Orden v. Perry*,
   545 U.S. 677 (2005).......................................................................................... 22, 23, 28

*Venuto v. Owens-Corning Fiberglas Corp.*,
   22 Cal. App. 3d 116 (1971) ........................................................................................... 17

*Walz v. Tax Com'n*,
   397 U.S. 664 (1970) ..................................................................................................... 22

*Warsaw v. Chicago Metallic Ceilings, Inc.*,
   35 Cal. 3d 564 (1984) ................................................................................................... 16

*Weideman v. Staheli*,
   88 Cal. App. 2d 613 (1948) ........................................................................................... 16

*Weinbaum v. City of Las Cruces*,
   541 F.3d 1017 (10th Cir. 2008) ...................................................................................... 23

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

*Wilson v. S. Cal. Edison Co.*,
  234 Cal. App. 4th 123 (2015) .................................................................................... 19

**Statutes**

California Civil Code
  Section 3482 ............................................................................................................... 17

California Code of Civil Procedure
  Section 318 ................................................................................................................. 15

California Code of Regulations
  Section 3.07 ................................................................................................................ 13

California Evidence Code
  Section 662 ................................................................................................................. 15

Government Code
  Section 51182 ............................................................................................................. 13

**Constitutional Provisions**

California Constitution
  Article I Section 4 .................................................................................................. 21, 27

California Constitution
  Article XII Section 5 .................................................................................................... 18

California Constitution
  Article XII Section 8 .............................................................................................. 17, 18

United States Constitution
  First Amendment .............................................................................................. 20, 21, 24

**Rules**

Federal Rule of Civil Procedure
  Rule 56 .......................................................................................................... 1, 14, 15

**Other Authorities**

California Civil Jury Instructions
  No. 2000 ...................................................................................................................... 16

California Public Utilities Commission General Order 95, Section III, Rule 35 ........................ 17

Department of Defense Appropriations Act, 2004, Section 8121 ................................................ 25

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

# MEMORANDUM

## A.  Facts

### 1.  The Parties.

Counter-Defendant The Albany Lions Club is a local chapter of The Lions Club International, the world's largest philanthropic organization. In addition to the chapter's many service projects, The Albany Lions Club has raised money for countless individuals and organizations within the community. Counter-Defendant The Albany Lions Foundation is a foundation set up by The Albany Lions Club to use revenues received from the public for projects that benefit the public.

Counter-Claimants include the City of Albany and various current and former city officials, including Fire Chief Lance Calkins, Community Development Director of the City Jeff Bond, former City Manager Penelope Leach Crumpley, and City Councilmembers Peter Maass and Rochelle A. Nason. Only the City of Albany has an interest in the property at issue.

### 2.  The Cross is privately erected in 1971 on private land.

In 1971, The Albany Lions Club, with the consent of the landowner, constructed an electrically-illuminated steel and plexiglass cross (the "Cross") on the east side of Albany Hill in the City of Albany. The property was owned by club member Hubert F. Call and his wife Ruth Call. The Cross stands approximately 20 feet high, and is firmly anchored in a permanent concrete base. The Albany Lions Club has illuminated the Cross during the Christmas and Easter holiday seasons and on other special occasions. When not lighted by The Albany Lions Club, the Cross is virtually invisible and unnoticed.

### 3.  The Albany Lions Club is granted an easement in 1973 to maintain the Cross.

On August 17, 1973, Hubert and Ruth Call granted an easement for ingress, egress, and to maintain the Cross to The Albany Lions Club. Exhibit B to the Declaration of Robert E. Nichols (all further Exhibit references are to this declaration unless otherwise noted). Hubert and Ruth Call also sold the Albany Hill property, including the specific land upon which the Cross was located, to the developer which in turn transferred the subject property, burdened by The

**Gordon Rees Scully Mansukhani, LLP**
111 Broadway, Suite 1700
Oakland, CA 94607

Albany Lions Club's Cross easement, to the City. The Albany City Council adopted a resolution accepting the donation of the former Call property with the easement on August 21, 1973. Exhibit A.

### 4. The City accepts and acknowledges the easement since its granting.

Since acquiring the property in 1973, the City has recognized The Albany Lions Club's easement on the subject property. The City permitted The Albany Lions Club and its members unhindered access to the property to maintain the Cross, and to facilitate events at the Cross such as Sunday Easter Services. The City has even provided The Albany Lions Club a key to the gate on the north end of the property to access the Cross, and has cleared tree limbs and other obstacles obstructing the view of the illuminated Cross. Exhibit C.

### 5. The constitutionality of the Cross is upheld in a 1978 court decision affirmed in 1985.

The sale, transfer, and acceptance of the property with the easement were later challenged in a citizens' lawsuit alleging a conflict of interest because Hubert Call was a City Council member at the time of the transaction. In 1978, the trial court issued judgment and made the following findings of fact and conclusions of law:

> In approximately 1971, Call allowed the erection by the Albany Lions Club on the Call Parcel of a metal and glass cross, of approximately fifteen to twenty feet in height. Said cross remained on said property through the trial of the subject litigation. An electrical permit was issued to the Albany Lions Club when the cross was erected, and the cross was constructed so that it could be illuminated by the Albany Lions Club. … By Grant Deed dated August 17, 1973, recorded on or about August 24, 1973, Ruth and Hubert Call granted to the Albany Lions Club, and to Lions International, "an easement for ingress and egress to maintain the existing cross standing on a portion" of the Call Parcel. When the City accepted the deed to the Call Parcel from Cebert on August 21, 1973, by Council Resolution No. 73-76, and when the City took title to said parcel by recordation of the Grant Deed on or about August 24, 1973, the aforementioned cross was upon the Call Parcel. *The act of the City in accepting the deed to the Call Parcel had a secular purpose – the City accepted the Call Parcel for use by the public as a park.*

*Thomson v. The City of Albany*, Case No. 448248-8, May 2, 1978 Judgment at 18:06-19:10 (emphasis added) attached as Exhibit TTT to the Request for Judicial

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Notice. The court continued:

> The primary effect of the acceptance of the Call Parcel by the City – the addition of 1.1 acres of land to the City's park system – neither advanced nor inhibited religion; rather, the primary effect was to provide additional park land to the City and had negligible, if any, effect on any religious freedom. The acceptance of the Call Parcel by the City did not constitute excessive governmental entanglement with religion. *The acceptance by the City of real property encumbered by an easement for ingress and egress for the maintenance of a cross did not constitute action in violation of the First Amendment to the United States Constitution or any law, statutory or decisional.*

May 2, 1978 Judgment at 20:16-20:20; 22:22-23:10 (emphasis added), attached as Exhibit TTT to the Request for Judicial Notice.

The California Supreme Court affirmed that judgment in *Thomson v. Call*, 38 Cal. 3d 633 (1985). Addressing the potential establishment clause problem raised by the City's acquisition of property burdened with a cross, the court acknowledged that "…the acquisition had a secular purpose and effect (use by the public as a park), that acceptance of the land neither advanced nor inhibited religion, and that it did not constitute excessive governmental entanglement with religion or violation of the First Amendment." *Thomson*, *supra*, 38 Cal. 3d at 644.

### 6. In 2015, the City is pressured, on religious grounds, to force removal of the Cross.

Approximately thirty years after the California Supreme Court decision, in November 2015, the East Bay Atheist Group contacted the City complaining about the Cross. This group distributed literature describing a plan to force the removal of the Cross by causing The Albany Lions Club to make costly repairs to the Cross. The strategy was to force repairs which are so expensive that it would require The Albany Lions Club to forfeit its easement rights and remove the Cross.

Apparently prompted by pressure from the atheist group, for the first time, the City expressed "safety" concerns regarding the electrical service line extending from the utility pole to the top of the Cross because it ran through the branches of a tree. Instead of contacting PG&E, which is responsible for the maintenance of the utility line, the City demanded that The Albany Lions Club install an intermediate utility pole and would issue a permit on the same day.

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

1    Exhibits J and L. The Albany Lions Club offered to install the City's desired pole as soon as

2    weather permitted. However, upon hearing this, the City did a "180 degree" turn and

3    significantly altered its demand - now requiring The Albany Lions Club to submit detailed

4    drawings and obtain city council approval. Exhibits R and Y.

5         In response, The Albany Lions Club sent a detailed letter to the City explaining its

6    position that the City lacked legal authority for its request and that PG&E, not The Albany Lions

7    Club, was responsible for the line. Finally, The Albany Lions Club demanded basic due process

8    before the utility disconnection occurred. Exhibit Z. The City never responded to this letter.

9         On February 1, 2016, two months after the City initially expressed its "safety" concerns

10   regarding the electrical service line, the City conducted a public hearing where council members

11   Barnes, Plitch, Maass and Nason demanded the removal of the Cross. Another two months

12   passed when, on April 4, 2016, the City presented a "Settlement Communication" and for the

13   first time requested the Lions Club to remove the Cross in exchange for the placement of a bench

14   with a plaque. Exhibit DD. The Settlement Communication made no reference to the "safety"

15   concerns.

16        **7.  In August 2016, the City disconnects electrical service to the Cross
              without due process.**

17        On August 16, 2016, Defendants Maass, Nason, Crumpley and the City Attorney met to

18   discuss the Cross. (The details of this meeting have not been disclosed because Defendants

19   contend the presence of the City Attorney made this a confidential attorney/client conversation.)

20   Following the meeting, the City Manager instructed the Fire Chief to contact PG&E and

21   determine what would be necessary to disconnect utility service to the Cross. Exhibit II. On

22   August 31, 2016, the City requested PG&E disconnect utility service. Exhibit LL.

23        The City now claims that it contacted PG&E in August 2016 expressly due to damaged

24   power lines. However, no such damage was noted in any communications or correspondence

25   over the prior eight months. Exhibits J, L, R, Y, Z, and DD. Moreover, despite claims of an

26   emergency, the City did not contact the Lions Club. Instead the City contacted PG&E on August

27   16, 2016 to determine the process for disconnecting service, specifically instructing PG&E not to

28

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

disconnect at that time. Exhibit MM. Eleven days then transpired before the City requested an emergency disconnection of service. In its request, the City still did not mention the claimed "dangerous condition." Likewise, the City did not post a fire truck or even a firefighter to stand watch. Exhibit OO.

Per the City's request, the utility service was disconnected by PG&E. The Albany Lions Club responded to this action by letter, again stating PG&E was responsible for the utility line and moreover pointing out that the authorities cited by the City in support of its position were in fact irrelevant. Exhibit BBB.

• The City cited to Public Resources Code section 4291, which addresses the creation of "defensible space" in front of a building or structure by removing fuel. Further, paragraph (b) of this statute provides: "A person is not required under this section to manage fuels on land if that person does not have the legal right to manage fuels, nor is a person required to enter upon or to alter property that is owned by any other person without the consent of the owner of the property." The Albany Lions was not required to manage fuels on the land owned by the City.

• The City cited to Government Code section 51182 was equally inapplicable to the matter; this provision applies to persons who own, lease, control, operate, or maintain an occupied dwelling or occupied structure. The Cross, of course, is not occupied.

• Title 19 of the California Code of Regulations, section 3.07, addresses, in slightly more detail, the requirements of section 51182 regarding combustible material within ten feet of a structure, ground clearance, fire clearance, and tree removal.

• The City cited to Title 14, Division 1.5 of the California Code of Regulations contains fourteen separate chapters ranging from "Department of Forestry and Fire Protection-Conflict of Interest" to "Lumber Products Assessment" – none of which are applicable in this matter.

In short, the City's disconnection of utility service was never about public safety, or done with any proper legal basis. The City's actions were merely a further attempt to force The Albany Lions Club to relinquish the Cross and easement without compensation. Council member

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

and counter-claimant Rochelle Nason clearly expressed the City's intent in a series of publicly

published statements, including:

> The Albany City Council and many residents would like to see it
> replaced with something nonsectarian. We envision a site that
> could still be used for Easter services and other Christian religious
> ceremonies, but that could also be used for non-Christian and non-
> religious purposes. …
>
> I am hoping there might be Lions Club members on Nextdoor who
> would be willing and able to help persuade the 'Albany' Lions
> Club group to work with the city rather than suing us. … If you are
> a Lion or know Lions Club members, especially in the East Bay,
> please be sure that Lions are informed and encouraged to make
> their voices heard about this behavior. My hope is to hear some
> roars of disapproval from local Lions who work to foster that
> 'spirit of understanding' we all should share.

Exhibit SSS.

### 8.  Power is restored to the Cross.

One hundred-six days following the disconnection, the City abandoned its position that

The Albany Lions Club was responsible for the power lines. Fire Chief Calkins wrote to PG&E

noting that, "PG&E's legal counsel has suggested PG&E is responsible for addressing any safety

issues related to the electrical service line … PG&E will make the ultimate determination as to

the safety of the line; the City hereby authorizes PG&E to restore electrical service to the cross."

Exhibit QQQ.

The Albany Lions Club sued the City for redress of these injuries. In response,

Defendants filed this meritless, purely retaliatory counter-claim.

### B.  Argument

#### 1.  The standard for summary judgment.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of

factually unsupported claims or defenses…" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324

(1986). A motion for summary judgment "pierces" the pleadings and puts the opponent to the

1   test of affirmatively coming forward with sufficient evidence to create a genuine issue for trial.

2   *Id*. at 325; *see also* Fed. R. Civ. Proc., Rule 56, Advisory Committee Notes, 1963 Amendment.

3        The only way the opposing party can defeat a motion for summary judgment is by laying

4   out specific facts establishing a genuine issue of material fact. *Matsushita Electronic Industrial*

5   *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-587 (1986); Fed. R. Civ. Proc. 56(e) . "The

6   issue of fact must be 'genuine.' … When the moving party has carried its burden under Rule

7   56(c), its opponent must do more than simply show that there is some metaphysical doubt as to

8   the material facts." *Matsushita*, 475 U.S. at 587 (citations omitted).

9          **2.   Counter-Claimants' cause of action for quiet title fails because the statute**
              **of limitations has run and Counter-Claimants have not put forth clear**
10             **and convincing evidence of title.**

11            **i.   Counter-Claimants' cause of action for quiet title fails because the**
                  **statute of limitations has run.**
12
         The statute of limitations for a quiet title action, California Code of Civil Procedure §
13
    318, states: "No action for the recovery of real property, or for the recovery of the possession
14
    thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or
15
    grantor, was seized or possessed of the property in question, within five years before the
16
    commencement of the action."
17
         Here, the statute of limitations lapsed over forty years ago. The City took the land subject
18
    to the easement in 1973. The Albany City Council adopted a resolution accepting the donation of
19
    the former Call property with the easement on August 21, 1973. Therefore, the City had until
20
    August 21, 1978 in which to bring forth an action for quiet title.
21
22           **ii.   Counter-Claimants' cause of action for quiet title fails because**
                 **Counter-Claimants have not put forth clear and convincing evidence**
23               **of title inconsistent with the easement.**

24       A plaintiff seeking to quiet title against a person with legal title to property has the

25  burden of proving title by "clear and convincing proof," rather than by the preponderance of

26  evidence usually used in civil cases. Cal. Evid. Code § 662; see also *Midland Innovations, NV v.*

27  *Weiland Int'l, Inc.*, Nos. 15-16015, 15-16016, 2017 U.S. App. LEXIS 20562 (9th Cir. Oct. 19,

28  2017) (applying Cal. Evid. Code § 662 in an action for quiet title).

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Here, Counter-Claimants have absolutely no evidence of title inconsistent with the easement – in fact, Counter-Claimants have provided affirmative evidence of The Albany Lions Club's valid easement. Under the law, without clear and convincing proof invalidating the easement, this cause of action fails.

### 3. Counter-Claimants' cause of action for trespass fails because Counter-Defendants have a valid or prescriptive easement.

In order to establish trespass under California law, Counter-Claimants must prove that they did not give permission for the entry. California Civil Jury Instructions 2000; *see also Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 16-17 (1977) ("Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong."). Thus, Counter-Claimants' cause of action fails because Counter-Defendants' easement for ingress and egress has been recognized by Counter-Claimants for decades. The City has even provided The Albany Lions Club a key to the gate on the north end of the property to access the Cross.

Even if, for some reason, the deed granting the easement is deemed invalid, Counter-Defendants have maintained their right through a prescriptive easement. In California, a user of land may establish a prescriptive easement by proving that his or her use of another's land was: (1) continuous and uninterrupted for five years; (2) open and notorious; and (3) hostile. *Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 570-72 (1984); *Felgenhauer v. Soni*, 121 Cal. App. 4th 445, 449-50 (2004).

In this context, "continuous" use means that the use occurred over a five-year period on occasions necessary for the convenience of the user. Even occasional or seasonal use is sufficient. *Weideman v. Staheli*, 88 Cal. App. 2d 613, 616 (1948) (occasional use sufficient); *Harrison v. Bouris*, 139 Cal. App. 2d 170, 173 (1956) (used 10 times per year). Use of property is "open and notorious" when it is "sufficient to impart actual or constructive notice of the use to the owner …" *Connolly v. McDermott*, 162 Cal. App. 3d 973, 977 (1984); *see also Hails v. Martz*, 28 Cal. 2d 775, 778 (1946) ("It is the general rule that open, visible and notorious possession will raise a presumption of notice.").

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

1    A use of land qualifies as "hostile" if it is done without the permission of the owner.

2    *Aaron v. Dunham*, 137 Cal. App. 4th 1244, 1249 (2006) ('adverse use' means only that owner

3    has not expressly consented to use); *Felgenhauer v. Soni*, 121 Cal. App. 4th 445, 447 (2004)

4    (claim of right simply means that property was used without permission of landowner; claimant

5    need not believe he or she is legally entitled to use of easement).

6        Here, Counter-Defendants openly, notoriously, continuously, and – if the easement was

7    truly invalid – hostilely used the land for over the statutory period of five years. In fact, The

8    Albany Lions Club regularly maintained and illuminated the Cross during the Christmas and

9    Easter seasons, as well as other holidays, for over forty years. Its visibility is the very basis for

10   this retaliatory counter-claim.

11       **4.   Counter-Claimants' cause of action for nuisance fails because nothing
           maintained under the express authority of a statute can be deemed a
12         nuisance, Counter-Claimants consented to the presence of the Cross, and
           it is not indecent, obstructive, or a fire hazard.**

13   "[A] private nuisance is a civil wrong based on disturbance of rights in land while a

14   public nuisance is not dependent upon a disturbance of rights in land but upon an interference

15   with the rights of the community at large." *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal.

16   App. 3d 116, 124 (1971) (internal citation omitted). Although Counter-Claimants have not

17   specified which type of nuisance they allege, the undisputed facts refute both.

18       **i.   Counter-Claimants have no cause of action for nuisance because the
           electrical wiring of the Cross is statutorily permitted.**
19

20       "Nothing which is done or maintained under the express authority of a statute can be

21   deemed a nuisance." California Civil Code section 3482. California Public Utilities Commission

22   General Order 95, Section III, Rule 35 explicitly provides that the utility company is responsible

23   for correcting any damaged insulation resulting from the friction between the vegetation and

24   conductor. Specifically, "[c]ontact between vegetation and conductors, in and of itself, does not

25   constitute a nonconformance with the rule." *Ibid.*

26       The California Constitution has granted legislative powers to the California Public

27   Utilities Commission: "A city, county, or other public body may not regulate matters over which

28   the Legislature grants regulatory power to the Commission." Cal. Const., Art. XII § 8. This

**Gordon Rees Scully Mansukhani, LLP**
**1111 Broadway, Suite 1700**
**Oakland, CA 94607**

-17-

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

provision vests the legislature with "plenary power, unlimited by other provisions of [the California] constitution … to confer additional authority and jurisdiction upon the [Public Utilities Commission]." Cal. Const., Art. XII, § 5. Taken together, Cal. Const., Art. XII sections 5 and 8 "expressly authorize the Legislature to confer authority upon the [Commussion] which is unlimited by other provisions of the constitution and which is superior to the charter powers of a city or county over municipal affairs…" *Cal. Apartment Ass'n v. City of Stockton*, 80 Cal. App. 4th 699, 709 (2000). In *Los Angeles Ry. Corp. v. Los Angeles*, 16 Cal. 2d 779, 787 (1940), the Supreme Court explained:

> Regulations of great businesses affected with a public interest touching every institution, every activity, every home and every person in the state must be uniform, and must be free from the local judgment and prejudice. Then too, many of these utilities reached into other communities, and uniformity of regulation by all these communities would be an unlooked for result. … None of these great interests would be served if each community retained the power of making such police regulations as each might deem proper. … Neither the public nor the service corporation could tolerate as many standards and policies as there were towns, cities, or boroughs through which they operated. … Over regulations not exclusively local, those affecting the business as a whole, or affecting the public as a whole, and those which the nature of the business and the character of the regulation require should be under the single agency of the state, are by our act *committed to the exclusive jurisdiction of the Public Utilities Commission*.

(Emphasis added). Therefore, maintenance of the electric lines to the Cross are the "exclusive jurisdiction" of PG&E. The Albany Lions Club cannot be held responsible for any alleged "safety" concerns relating to the electric lines, and, moreover, the electric lines' presence in the eucalyptus foliage was not – and is not – a nuisance under the law.

## ii. Counter-Claimants have no cause of action for private nuisance because they cannot prove the necessary elements of the claim.

To establish this claim, Counter-Claimants must prove all of the following:

a. That each Counter-Claimant owned or controlled the property;

b. That Counter-Defendants created a condition that was indecent or offensive to the senses; was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;

1                         unlawfully obstructed the free passage or use of the public park; or

2                         was a fire hazard;

3            c.   That this condition interfered with Counter-Claimants' use or

4                         enjoyment of the land;

5            d.   That Counter-Claimants did not consent to Counter-Defendants'

6                         conduct;

7            e.   That an ordinary person would be reasonably annoyed or disturbed by

8                         Counter-Defendants' conduct; and

9            f.   That the seriousness of the harm outweighs the public benefit of

10                         Counter-Defendants' conduct.

11   *See Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123 (2015) (nuisance action applying these

12   elements). Immediately apparent is the fact that not all of the Counter-Claimants own or control

13   the site at issue. Indeed, only the City of Albany is recognized as the "owner" of the public park.

14   Therefore, Counter-Claimants Lance Calkins, Jeff Bond, Penelope Leach Crumpley, Peter

15   Maass, and Rochelle A. Nason cannot establish this first element.

16           As to the second element, it is unthinkable that a historic monument that has been a part

17   of the community for decades is "a condition that was indecent or offensive to the senses." There

18   is no evidence that the Cross or the easement is somehow "an obstruction to the free use of

19   property, so as to interfere with the comfortable enjoyment of life or property; [or] unlawfully

20   obstructed the free passage or use of the public park." The Cross has been in place for over forty

21   years, and has, in that time, become a beloved symbol of Albany Hill. In all of that time, it has

22   never interfered with the use or enjoyment of the public park, any more than a neighborhood

23   church would.

24           Likewise, the Cross is not a fire hazard. The City ultimately admitted as much: The City

25   took months to deliberate before requesting an emergency disconnection of service. When the

26   City inexplicably determined the utility line was an immediate life and safety hazard, it was

27   leisurely in contacting PG&E to inquire about the disconnection process. On August 20, 2016,

28

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

-19-

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1    Defendant Calkins even instructed PG&E: "Please do not disconnect it at this time. I am waiting

2    for final approval from my City Manager to disconnect the power." Exhibits MM and NN.

3         The request for disconnection of service did not occur until August 31, 2016, fifteen days

4    after the so-called immediate life and safety hazard arose. Defendant Calkins took no emergency

5    precautions – such as sending a fire truck to the location or posting a fire fighter to assure a fire

6    did not erupt. In fact, after much back-and-forth, Fire Chief Calkins admitted to PG&E that "…

7    PG&E is responsible for addressing any safety issues related to the electrical service line …

8    PG&E will make the ultimate determination as to the safety of the line; the City hereby

9    authorizes PG&E to restore electrical service to the cross."

10        By accepting the parcel of land for a public park back in the 1970s – subject to the valid

11   easement – the City has consented to the presence of the Cross. Its seasonal, unobtrusive

12   illumination is something many have come to love. A cross is not a "harm," and, therefore,

13   Counter-Defendants cannot establish and the cause of action for private nuisance fails.

14              **iii.  Counter-Claimants have no cause of action for public nuisance
                because they cannot prove the necessary elements of the claim.**

15

16        To establish this claim, Counter-Claimants must prove all of the same elements as for

17   private nuisance, save (1) that Counter-Claimants owned or controlled the property, and (2) that

18   this condition interfered with Counter-Claimants' use or enjoyment of the land. Nevertheless, as

19   discussed above, Counter-Claimants cannot establish multiple elements of the claim. To rule that

20   public display of a cross is an offensive or indecent "condition" would make every Christian

21   church in the country subject to public nuisance suits. Therefore, Counter-Claimants' cause of

22   action for public nuisance too fails.

23         **5.  Counter-Claimants' causes of action for violation of the Establishment
               Clause and the California Constitution fail because the Cross was
               established by a non-governmental entity, before the park was acquired,
               and its constitutionality has already been litigated.**

24

25              **i.  There is no violation of the California or U.S. Constitution because
                The Albany Lions Club is not a government entity.**

26

27        Counter-Claimants allege that The Albany Lions Club is in violation of the First

28   Amendment Establishment Clause and the California "No Preference" Clause, but these

1    provisions are only applicable to governmental entities – not private entities. *See*, *e.g.*, *Lopes v.*

2    *Wren*, No. C 06-03705 CRB, 2007 U.S. Dist. LEXIS 45660, at *12 (N.D. Cal. June 25, 2007)

3    ("As the [defendant] is not a government entity, the Establishment Clause does not apply as a

4    matter of law."); *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1213-14 (9th Cir. 1996) (holding

5    that the "No Preference" Clause only applies to government entities).

6        In fact, The Albany Lions Club's right to display the Cross on its private easement is

7    protected by both the right to freedom of speech and the right to free exercise of religion. "There

8    is a crucial difference between *government* speech endorsing religion, which the Establishment

9    Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise

10   Clauses protect." *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 250 (1990)

11   (emphasis in original); *see also Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753,

12   767 (1995) (holding that "private religious speech … is as fully protected under the Free Speech

13   Clause as secular private expression … [it] receives preferential treatment under the Free

14   Exercise Clause.").

15       The California Constitution is much to the same effect: "The free exercise and enjoyment

16   of religious profession and worship, without discrimination of preference, shall forever be

17   guaranteed in this State; …" Cal. Const., Art. I § 4. The state constitutional guarantee, like the

18   federal one, forbids "any type of discrimination" in "the enjoyment of religious profession," and,

19   as with the federal Constitution, "[r]eligious guarantees in our constitutions stem not from

20   opposition to religion but from respect for it – and for the right of each person to determine for

21   himself his fundamental faith." *Citizens for Parental Rights v. San Mateo Cty. Bd. of Educ.*, 51

22   Cal. App. 3d 1, 25 n. 26 (1975) (). Therefore, there can be no violation of the California or U.S.

23   Constitution because The Albany Lions Club is not a government entity.

24             **ii.  There is no violation of the U.S. Constitution because the Cross is a
25             longstanding, privately-maintained monument that is not a
             government endorsement of religion.**

26       The First Amendment's Establishment Clause prohibits the government from making any

27   law "respecting an establishment of religion." U.S. Const. Amend. 1. "In the absence of precisely

28   stated constitutional prohibitions, we must draw lines with reference to the three main evils

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

-21-

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1  against which the Establishment Clause was intended to afford protection: 'sponsorship,

2  financial support, and active involvement of the sovereign in religious activity.'" *Lemon v.*

3  *Kurtzman*, 403 U.S. 602, 612 (1971) (quoting *Walz v. Tax Com'n*, 397 U.S. 664, 668 (1970)).

4       But recent decisions from the Supreme Court insist that "[w]hatever may be the fate of

5  the *Lemon* test in the larger scheme of Establishment Clause jurisprudence, *we think it not useful*

6  *in dealing with the sort of passive monument that [the government] has erected on [public]*

7  *grounds*. Instead, our analysis is driven both by the nature of the monument and by our Nation's

8  history … 'There is an unbroken history of official acknowledgment by all three branches of

9  government of the role of religion in American life from at least 1789.'" *Van Orden v. Perry*,

10  545 U.S. 677, 686 (2005) (citations omitted and emphasis added).

11       In *Van Orden*, *supra*, the Supreme Court held that the placement of a Ten

12  Commandments monument erected by the Fraternal Order of Eagles on state capitol grounds was

13  not a violation of the Establishment Clause of the First Amendment: "Simply having religious

14  content or promoting a message consistent with a religious doctrine does not run afoul of the

15  Establishment Clause." *Id.* at 681. Indeed, the inclusion of the Ten Commandments monument

16  had dual significance, both religious and historic.

17       Such acknowledgments of the role played by the Ten
18  Commandments in our Nation's heritage are common throughout
   America. We need only look within our own Courtroom. Since
19  1935, Moses has stood, holding two tablets that reveal portions of
   the Ten Commandments written in Hebrew, among other
20  lawgivers in the south frieze. Representations of the Ten
   Commandments adorn the metal gates lining the north and south
21  sides of the Courtroom as well as the doors leading into the
   Courtroom. Moses also sits on the exterior east facade of the
22  building holding the Ten Commandments tablets.

23       Similar acknowledgments can be seen throughout a visitor's tour
   of our Nation's Capital. For example, a large statue of Moses
24  holding the Ten Commandments, alongside a statue of the Apostle
   Paul, has overlooked the rotunda of the Library of Congress'
25  Jefferson Building since 1897. And the Jefferson Building's Great
   Reading Room contains a sculpture of a woman beside the Ten
26  Commandments with a quote above her from the Old Testament
   (Micah 6:8). A medallion with two tablets depicting the Ten
27  Commandments decorates the floor of the National Archives.
   Inside the Department of Justice, a statue entitled "The Spirit of
28  Law" has two tablets representing the Ten Commandments lying at
   its feet. In front of the Ronald Reagan Building is another sculpture

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> that includes a depiction of the Ten Commandments. So too a 24-foot-tall sculpture, depicting, among other things, the Ten Commandments **and a cross**, stands outside the federal courthouse that houses both the Court of Appeals and the District Court for the District of Columbia. Moses is also prominently featured in the Chamber of the United States House of Representatives. … These displays and recognitions of the Ten Commandments bespeak the rich American tradition of religious acknowledgments.

*Van Orden*, *supra*, 545 U.S. at 688-90 (citations omitted and emphasis added). The Court went on to discuss the limits of the Establishment Clause:

> Recognition of the role of God in our Nation's heritage has also been reflected in our decisions. We have acknowledged, for example, that "religion has been closely identified with our history and government," and that "[t]he history of man is inseparable from the history of religion" … This recognition has led us to hold that the Establishment Clause permits a state legislature to open its daily sessions with a prayer by a chaplain paid by the State. Such a practice, we thought, was "deeply embedded in the history and tradition of this country." As we observed there, "it would be incongruous to interpret [the Establishment Clause] as imposing more stringent First Amendment limits on the states than the draftsmen imposed on the Federal Government." With similar reasoning, we have upheld laws, which originated from one of the Ten Commandments, that prohibited the sale of merchandise on Sunday.

*Id*. at 687-88 (citations omitted); *see also Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1031 (10th Cir. 2008) ("If a government symbol has long gone unchallenged, there is a suggestion that an objective observer would not think that the symbol endorses a religious message.").

In sum, the United States has a different approach to the separation of Church and State than other nations. In France, for example, there is radical enforcement of secularity. French law goes so far as to ban the wearing of conspicuous religious symbols in public schools (e.g., Muslim veils, Sikh turbans, or Jewish yarmulke). The United States, however, is not a country ruled by this concept of secularism, or laïcité, in which the Church and State are separated without recognition. Rather, the United States strikes a balance between longstanding, passive religious acknowledgments and active or prospective displays.

For example, in *Anderson v. Salt Lake City Corp.*, 475 F.2d 29 (10th Cir. 1973), the court held that a permanent, granite monolith inscribed with the Ten Commandments on public property did not violate the First Amendment. In that case, Salt Lake City informally permitted

**Gordon Rees Scully Mansukhani, LLP**
**1111 Broadway, Suite 1700**
**Oakland, CA 94607**

1    the Fraternal Order of Eagles to erect on city-county courthouse grounds a permanent 3 x 5-foot

2    granite monolith inscribed with a version of the Ten Commandments and certain other symbols

3    representing "the All Seeing Eye of God, the Star of David, the Order of Eagles, letters of the

4    Hebraic alphabet, and Christ or peace." *Id.* at 30.

5           The City also formally authorized the installation and maintenance of lighting equipment

6    to illuminate and enhance the display, <u>at City and County expense</u>. *Ibid.* The *Anderson* court

7    pointed out that "[s]imilar monoliths have been erected in public places across the United States

8    and Canada – nine of them in Utah – as part of the Eagles' established and continuing 'youth

9    guidance program,' and '… to inspire all who pause to view them, with a renewed respect for the

10   law of God, which is our greatest strength against the forces that threaten our way of life.'" *Id.* at

11   30; *see also ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772 (8th Cir. 2005) (holding

12   that a permanent, granite monolith inscribed with the Ten Commandments on public property did

13   not violate the First Amendment).

14          The plaintiffs, all residents and taxpayers of Salt Lake County, brought suit seeking

15   removal of the monolith and an injunction prohibiting the City and County from permitting

16   erection or maintenance of any similar monument on public land, alleging that the presence of

17   the monolith is a violation of the Establishment Clause of the First Amendment, United States

18   Constitution, and a similar provision in the Utah Constitution. However, the court deemed the

19   monument constitutional: "The wholesome neutrality guaranteed by the Establishment and Free

20   Exercise Clauses does not dictate obliteration of all our religious traditions." *Id.* at 34.

21          These holdings are not limited to the Ten Commandments. In *Salazar v. Buono*, 559 U.S.

22   700 (2010), the Court considered the constitutionality of a large, white Christian cross erected by

23   members of the Veterans of Foreign Wars (VFW) on federal land in the Mojave Desert. In 1934,

24   VFW members placed the cross on federal land to honor American soldiers who died in World

25   War I. Almost seventy years later, a regular visitor to the land, respondent Buono, filed suit

26   alleging a violation of the First Amendment's Establishment Clause and seeking an injunction

27   requiring the Government to remove the cross.

28

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

In the litigation's first stage (Buono I), the district court found that Buono had standing to sue and, concluding that the presence of the cross on federal land conveyed an impression of governmental endorsement of religion, it granted Buono's requested injunctive relief (2002 injunction). While the Government's appeal was pending, Congress passed the Department of Defense Appropriations Act, 2004, § 8121(a), which directed the Secretary of the Interior to transfer the cross and the land on which it stands to the VFW in exchange for privately owned land elsewhere in the land preserve. Affirming the district court's judgment both as to standing and on the merits, the Ninth Circuit declined to address the statute's effect on Buono's suit or the statute's constitutionality (Buono II).

Buono then returned to the district court seeking injunctive relief against the land transfer, either through enforcement or modification of the 2002 injunction. In 2005, that court rejected the Government's claim that the transfer was a bona fide attempt to comply with the injunction, concluding, instead, that it was actually an invalid attempt to keep the cross on display. The court granted Buono's motion to enforce the 2002 injunction; denied as moot his motion to amend it; and permanently enjoined the Government from implementing the land-transfer statute (Buono III). The Ninth Circuit again affirmed, largely following the district court's reasoning.

However, when the matter reached the United States Supreme Court, the Court reversed and remanded – holding that the VFW's large, white Christian cross may remain. Justice Anthony Kennedy explained, "The goal of avoiding governmental endorsement does not require eradication of all religious symbols in the public realm. A cross by the side of a public highway marking, for instance, the place where a state trooper perished need not be taken as a statement of governmental support for sectarian beliefs. The Constitution does not oblige government to avoid any public acknowledgment of religion's role in society." *Salazar*, *supra*, 559 U.S. at 718-719.

"The land transfer would not … constitute an endorsement of religion in violation of the Establishment Clause. The so-called 'endorsement test' views a challenged religious display through the eyes of a hypothetical reasonable observer aware of the history and all other

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1    pertinent facts relating to the display. Here, therefore, this observer would be familiar with the

2    monument's origin and history and thereby appreciate that the transfer represents an effort by

3    Congress to address a unique situation and to find a solution that best accommodates conflicting

4    concerns." *Id*. at 703. The Court concluded that that land transfer was enacted to "embrac[e] the

5    monument's religious message but to commemorate the Nation's war dead and to avoid the

6    disturbing symbolism that would have been created by the monument's destruction." *Ibid*.

7         In the Ninth Circuit in particular, the historic context of a longstanding religious

8    monument is determinative. For example, in *Card v. City of Everett*, 520 F.3d 1009 (9th Cir.

9    2008), Plaintiff argued that the city's display of a religious monument, which was donated to the

10   city by a local chapter of a national civic organization, violated the Establishment Clause. The

11   court considered the history and context of the display – not to mention the fact that complaints

12   did not surface until it had been in place for over thirty years – to determine that the monument

13   successfully passed constitutional scrutiny. By comparison, in *Trunk v. City of San Diego*, 629

14   F.3d 1099 (9th Cir. 2011), the court held that the historical context of a particular religious

15   monument suggested a continuous implication of government endorsement and exclusion. In

16   making the distinction, the court stated: "Simply because there is a cross or a religious symbol on

17   public land does not mean that there is a constitutional violation." *Trunk*, *supr*a, 629 F.3d at

18   1102. But in *Trunk*, the religious monument's violation arose in part because of an

19   incontrovertible backdrop of "long-standing, culturally entrenched anti-Semitism" in the area.

20   *Trunk*, *supr*a, 629 F.3d at 1121.

21        Most recently, in *Freedom from Religion Found, Inc. v. Weber*, 628 F. App'x 952 (9th

22   Cir. 2015), the court held that the government's renewal of a permit for a religious monument

23   did not violate the Establishment Clause because it reflected a secular purpose, including the

24   monument's cultural and historical significance. Of the factors considered, the court noted the

25   monument's plaque communicating that it is privately owned and maintained, as well as an

26   "absence of complaints throughout its sixty-year history." *Freedom from Religion Found, Inc.*,

27   *supra*, 628 F. App'x at 954.

28

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

1    Like the cross in *Salazar*, the easement at issue was created as a way to protect the

2    interests of The Albany Lions Club while simultaneously avoiding the appearance of government

3    endorsement. Unlike the monument in *Anderson*, it is illuminated and maintained not by the

4    City, but by The Albany Lions Club. This monument predates the acquisition of the land, and its

5    destruction after forty years, at the hands of the government no less, sends a much more

6    disturbing message than the City's claims of perceived endorsement.

### iii. There is no violation of the California Constitution, and the claim was adjudicated thirty-two years ago.

> Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion.

Cal. Const., Art. I § 4. The first sentence is a rejection of the City's attempts to de-illuminate or

cause the removal of the Cross. Neither of the other two sentences is implicated in this case.

Besides, the City long ago had its chance to assert a constitutional argument about placement of

the Cross, and the California Supreme Court affirmed a judgment holding that there was no

constitutional violation.

"*Res judicata* [claim preclusion] prevents litigation of all grounds for, or defenses to,

recovery that were previously available to the parties, regardless of whether they were asserted

or determined in the prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 324 (9th Cir.

1988) (quoting *State Bd. of Equalization v. Superior Court*, 39 Cal.3d 633, 641 (1985))

(emphasis and alteration in original). The application of claim preclusion in California focuses

on three questions: "(1) was the previous adjudication on the merits, (2) was it final, and (3) does

the current dispute involve the same 'claim' or 'cause of action'?" *Ibid*. California has

consistently applied the "primary rights" theory, under which the invasion of one primary right

gives rise to a single cause of action. *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975) ("Even

where there are multiple legal theories upon which recovery might be predicated, one injury

gives rise to only one claim for relief.").

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

In 1978, the court in *Thomson v. The City of Albany*, Case No. 448248-8 specifically addressed "the potential establishment clause problem raised by the city's acquisition of property burdened with a cross." *Thomson v. Call*, 38 Cal. 3d 633, 644 (1985). The trial "court found that the acquisition had a secular purpose and effect (use by the public as a park), that acceptance of the land neither advanced nor inhibited religion, and that it did not constitute excessive governmental entanglement with religion or violation of the First Amendment." *Id.* (applying the three-part *Lemon v. Kurtzman* test). In *Thomson*, the California Supreme Court affirmed the judgment of the trial court. A petition to the U.S. Supreme Court for writ of certiorari was denied. *Call v. Albany*, 474 U.S. 1057 (1986).

It would be entirely unjust to relitigate an issue almost thirty-two years after it has been decided. The witnesses who were present at the time of the transfer of the land and the creation of the easement have all passed away, and the documentation has been largely expunged. A trial court, an appellate court, and the California Supreme Court had access to all of the evidence and decided, under the strictly-construed *Lemon* test, that there was no violation. Given that *Van Orden* is even more friendly to long-standing monuments that have a religious component but do not represent state endorsement of any particular religion, it is unlikely that the passage of time would itself require reversal of the decisions in *Thomson*. Any attempt to revisit this final decision, after such lengthy delay, would result in undue prejudice against Counter-Defendants and is wholly inequitable.

### 6. All of Counter-Claimants' causes of action fail because of the doctrine of laches.

"The doctrine of laches bars a cause of action when the plaintiff unreasonably delays in asserting or diligently pursuing the cause and the plaintiff has acquiesced in the act about which the plaintiff complains, or the delay has prejudiced defendant. The defense of laches has nothing to do with the merits of the cause against which it is asserted." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000) (citations omitted).

Since acquiring the property in 1973, the City has recognized The Albany Lions' easement on the subject property. The City permitted The Albany Lions' members unhindered

access to the property to maintain the Cross, and to facilitate events at the Cross such as Sunday Easter Services. The City has even provided a key to the gate on the north end of the property to access the Cross and has cleared tree limbs and other obstacles obstructing the view of the illuminated Cross.

It is absurd to think that now, approximately thirty years after the California Supreme Court decision, Defendants are attempting to force The Albany Lions to forfeit their easement rights and remove the Cross. Everyone involved in the original land transfer has since passed away, and the evidence from that time is long gone. The prejudice against The Albany Lions is enormous, and there is no excuse for Defendants' delay. Therefore, The Albany Lions are entitled to summary judgment.

**C. Conclusion**

Counter-Claimants' suit is purely retaliatory, an overreaction to the Lions' suit to enforce its easement and gain redress for the City's wrongful acts disconnecting power to the Cross. These very issues were litigated and decided decades ago, and this Cross has stood in peace ever since. The Albany Lions' Cross is a long-standing monument, maintained via a valid nonpossessory right, and a symbol that goes far beyond any simplistic religious representation. For the above reasons, the Court should grant Counter-Defendants The Lions Club of Albany, California and The Albany Lions Foundation summary judgment, or, in the alternative, partial summary judgment.

Respectfully submitted,

Dated: March 29, 2018

GORDON REES SCULLY MANSUKHANI, LLP

By: _____

Don Willenburg
Attorney for Counter-Defendants
The Lions Club of Albany, California and
The Albany Lions Foundation

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  One of my business addresses is: Gordon Rees Scully Mansukhani, LLP, 1111 Broadway, Suite 1700, Oakland, CA.  I served the within document(s):

**COUNTER-DEFENDANTS THE LIONS CLUB OF ALBANY, CALIFORNIA AND THE ALBANY LIONS CLUB FOUNDATION'S NOTICE AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

**DECLARATION OF ROBERT NICHOLS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT BY THE LIONS CLUB OF ALBANY, CALIFORNIA and THE ALBANY LIONS FOUNDATION**

**COUNTER-DEFENDANTS THE LIONS CLUB OF ALBANY, CALIFORNIA AND THE ALBANY LIONS CLUB FOUNDATION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

**[PROPOSED] ORDER GRANTING COUNTER-DEFENDANTS THE LIONS CLUB OF ALBANY, CALIFORNIA AND THE ALBANY LIONS CLUB FOUNDATION'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

☒ by electronically serving the document(s) described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

**BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS**.  By sending electronically a true and correct copy thereof to File & ServeXpress (fileandservexpress.com) for service on all counsel of record by electronic service pursuant to the Order Mandating Electronic Filing and Service of Asbestos Pleadings and pursuant to CCP § 1010.6 and CRC 2060(c).  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California the above is true and correct.

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Executed on March 29, 2018, at Oakland, California.

_____
ANDREA K. BEAN

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – Case No. 3:17-cv-05236 WHA

Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607